McKEE *v.* ASSAD.

(Division B. April 2, 1934.)

[153 So. 799. No. 31144.]

·John **W. Crisler** and **K. A. Carney,** both of Clarksdale, for appellant.

Greek P. Rice, of Clarksdale, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

Sam McKee was plaintiff in the court below, and brought suit in the county court against appellee, Joe Assad, for false imprisonment. The charge upon which he was arrested grew out of the following facts: The appellant here, Sam McKee, went into the store of the appellee, Joe Assad, and bought certain merchandise amounting to five dollars and twenty-five cents, and desired seventy-five cents in cash, and, according to his evidence, asked to be allowed to give a postdated check, and that this was agreed to in the presence of the appellee, the son of the appellee being a salesman in appellee's store and waiting on customers; that the appellee agreed to hold the check until the following Saturday.

According to the testimony of appellee, Joe Assad, the check was given by the appellant, and Joe Assad, Jr., asked appellant if the check was good, whereupon he stated that it would be paid on Monday, or when it was

carried to the bank. Joe Assad, Jr., then carried the check to his father, who told him not to take a check, and he agreed with his father that, if the check was not paid, he would pay it, and, after the check was presented and payment refused by the bank, Joe Assad, Jr., did pay his father, and was seeking to collect it.

The check was placed in the hands of a constable and was held for many weeks, during which time the constable was elected justice of the peace, after which he told Joe Assad, Jr., that he did not want to fool with the case further; that he was tired of it. It is alleged that Joe Assad, Jr., stated: "Well, if we cannot get the money and he will not pay it, we want to prosecute him," whereupon the justice of the peace wrote out an affidavit in the following words:

"State of Mississippi, Coahoma County.

"Before me, J. H. Burt, a Justice of the Peace of said County and District (no. 4) Joe Assad makes oath that Sam McKee on or about the 8th day of August, A. D. 1931, in said county and district No. 4 did wilfully and unlawfully make and give a check on Bank of Clarksdale for the sum of six dollars knowing he had no funds or insufficient funds in said bank to meet such check, and same has been presented to said bank for payment and has not been paid, with intent to cheat and defraud Joe Assad and others of their money against the peace and dignity of the state of Mississippi.

"Joe Assad.

"Sworn to and subscribed before me this 6 day of Jan. A. D. 1932.

"J. H. Burt, Justice of the Peace."

Upon this affidavit a warrant was issued, and the appellant was arrested and placed in jail, where he remained for three days, when the case was called for trial, and a jury was impaneled who heard the evidence, but failed to agree upon a verdict. The appellant was re-

manded to jail, where he remained for six more days, when the county prosecuting attorney entered a nol. pros. of the cause.

On the trial before a jury, one of the jurors said that Joe Assad testified that the reason they prosecuted Sam McKee was to collect the check. The justice of the peace testified that he had no summons for the defendant, but told his son to call him, and that the defendant voluntarily appeared and testified, but the justice of the peace refused to say, or did not remember, whether the defendant testified that he authorized the prosecution or not. The defendant, Joe Assad, testified that he did not authorize the prosecution, and that he did not agree to take the postdated check.

In our opinion, the jury was warranted in finding for the plaintiff in the county court as it did. The evidence of the juror, while contradicted, was sufficient, in connection with the other evidence, to show that the defendant, Joe Assad, consented to, or directed, the prosecution. His son was employed by him as a salesman, and the transaction arose in defendant's business, and at the time the prosecution was instituted the son was still working for his father, and acting for him. This with the father's testimony, as related by the juror, was sufficient to warrant the jury in finding that the defendant was responsible for the prosecution.

After the jury rendered the verdict in the county court for the plaintiff, a motion for a new trial was filed, and one of the jurors testified, over the objection of the plaintiff, that the jury reached its verdict by taking the amount that each juror thought ought to be allowed, and dividing the total sum by the number of jurors. The motion for a new trial in the county court was overruled, and the cause was sent to the docket of the circuit court for a new trial. The plaintiff refused to present a further motion in the circuit court, electing to stand upon the

verdict rendered in the county court and the the record there made.

The court did not specify what, in its opinion, constituted reversible error. It was not competent for a juror to impeach the verdict of the jury by showing their misconduct, and, if the circuit court was influenced by this evidence, it was in error in considering it.

We must look to the evidence as contained in the record, and, having done so, we find there was sufficient evidence to warrant the jury in finding for the plaintiff. The jury thought the plaintiff had made out a case, the judge of the county court thought so, and we think so. Therefore the verdict was not contrary to the overwhelming weight of the evidence, so as to warrant the circuit court in granting a new trial on this ground. The evidence was sufficient to warrant the verdict, and the court could not rightfully hold that the verdict was not supported by the evidence.

A number of instructions given for the plaintiff are claimed, on this appeal, to be erroneous. The rule is that the instructions in a case are to be considered together, one instruction as explaining, modifying, or supplementing another; and, if taking all of the instructions together, they are a correct announcement of the law, the judgment will not be reversed for an omission, imperfection, or slight error in any individual instruction. Applying this rule to the case before us, we think there was no ground for reversal upon the instructions. Whatever defects may exist in the plaintiff's instructions, they are clearly cured by the announcement in those procured by the defendant. Consequently the verdict of the circuit court is reversed, and the judgment of the county court is reinstated.

Reversed, and judgment rendered.